**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

TRANSTEL S.A.,

                  Plaintiff

        v.

CASTLELAKE L.P.,

                Defendant.

18 Civ. 3671 (JMF) (DCF)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**CASTLELAKE, L.P.'S MOTION TO DISMISS THE COMPLAINT**

Daniel R. Walfish
Rachel P. Fissell
WALFISH & FISSELL LLP
11 Broadway Suite 615
New York, NY 10004
Tel.: 212-672-0521
Email: dwalfish@walfishfissell.com

*Attorneys for Defendant Castlelake, L.P.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT...........................................................................................................................6

I.      The Non-Contract Claims Are Unfounded and Redundant .....................................7

        A.      Fiduciary Duty ..............................................................................................7

        B.      Unjust Enrichment ........................................................................................9

        C.      Constructive Trust.........................................................................................11

II.     Plaintiff Fails To State a Claim for Breach of Contract............................................12

        A.      Plaintiff Has Not Alleged Damages...............................................................12

        B.      Plaintiff's Requested "Specific Performance" Would Be
                Grossly Inequitable ........................................................................................16

        C.      Plaintiff Does Not Adequately Allege a Breach of the Agreement
                Because Transtel Consented to the Purchases ...............................................18

CONCLUSION.......................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andrews v. Sotheby Int'l Realty, Inc.*,
  2014 WL 626968 (S.D.N.Y. Feb. 18, 2014),
  *aff'd*, 586 Fed. App'x 76 (2d Cir. Dec. 5, 2014) ............................................................. 13, 15

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
  2006 WL 1493132 (S.D.N.Y. May 31, 2006) ............................................................. 17, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 7, 9

*Bank Midwest, N.A. v. Hypo Real Estate Capital Corp.*,
  2010 WL 4449366 (S.D.N.Y. 2010) .................................................................................... 15

*Barbara v. MarineMax, Inc.*,
  2012 WL 6025604 (E.D.N.Y. Dec. 4, 2012) .......................................................................... 9

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*,
  692 F.3d 42 (2d Cir. 2012) .................................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 7

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ................................................................................................... 7

*Boccardi Capital Sys. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
  2009 WL 362118 (S.D.N.Y. Feb. 9, 2009) .......................................................................... 14

*Canfield v. Reynolds*,
  631 F.2d 169 (2d Cir. 1980) ................................................................................................. 18

*Ciamara Corp. v. Widealab, Inc.*,
  2013 WL 6331927 (S.D.N.Y. Dec. 5, 2013) ................................................................... 11, 15

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) ....................................................................................................... 10, 11

*Davis v. 1568 Broadway Hotel Mgmt. LLC*,
  2018 WL 317849 (S.D.N.Y. Jan. 5, 2018) ............................................................................. 9

*Downey v. Adloox Inc.*,
    238 F. Supp. 3d 514 (S.D.N.Y. 2017)................................................................. 10

*Elias v. Rolling Stone LLC*,
    872 F.3d 97 (2d Cir. 2017)................................................................................ 7

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004).............................................................................. 12

*Fallon v. Wall Street Clearing Co.*,
    182 A.D.2d 245 (1st Dep't 1992). ..................................................................... 9

*Fixed Income Shares: Series M v. Citibank N.A.*,
    130 F. Supp. 3d 842 (S.D.N.Y. 2015)............................................................. 7, 8

*Goldman v. Met. Life Ins. Co.*,
    5 N.Y.3d 561 (2005) ....................................................................................... 9

*Gordon v. Dino De Laurentiis Corp.*,
    141 A.D.2d 435 (1st Dep't 1988) ..................................................................... 13

*Holowecki v. FedEx Corp.*,
    440 F.3d 558 (2d Cir. 2006).............................................................................. 19

*IBM Corp. v. Dale*,
    2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011)...................................................... 13

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    12 N.Y.3d 132 (2009) ..................................................................................... 9

*In re Ades and Berg Grp. Investors*,
    550 F.3d 240 (2d Cir. 2008).............................................................................. 12

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004)......................................................................... 10, 11

*In re Mid-Island Hospital Inc.*,
    276 F.3d 123 (2d Cir. 2002).............................................................................. 8

*Johnson v. Nextel Commc'ns, Inc.*,
    660 F.3d 131 (2d Cir. 2011)........................................................................... 7, 9

*Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.*,
    458 F. Supp. 1197 (S.D.N.Y. 1978).................................................................. 17

*La Mirada Prods. Co. v. Wassall PLC*,
   823 F. Supp. 138 (S.D.N.Y. 1993) ...................................................................... 16

*Laurus Master Fund, Ltd. v. Versacom Int'l, Inc.*,
   2003 WL 21219791 (S.D.N.Y. May 21, 2003) .................................................... 16

*McBeth v. Porges*,
   171 F. Supp. 3d 216 (S.D.N.Y. 2016)................................................................. 10

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
   921 F. Supp. 2d 94 (S.D.N.Y. 2013) ..................................................................... 9

*O.F.I. Imports v. G.E. Capital Corp.*,
   2016 WL 5376208 (S.D.N.Y. Sept. 26, 2016)....................................................... 8

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   592 F. Supp. 2d 608 (S.D.N.Y. 2009).................................................................... 8

*Pu v. Russell Publ'g Grp.*,
   683 Fed. Appx. 96 (2d Cir. 2017)........................................................................ 12

*Pyskaty v. Wide World of Cars, LLC*,
   856 F.3d 216 (2d Cir. 2017)................................................................................. 18

*Rincon v. Covidien*,
   2017 WL 2242969 (S.D.N.Y. May 22, 2017) ........................................................ 7

*Rudman v. Cowles Commc'ns, Inc.*,
   30 N.Y.2d 1 (1972) .............................................................................................. 18

*Speedfit LLC v. Woodway USA, Inc.*,
   53 F. Supp. 3d 561 (E.D.N.Y. 2014) ...................................................................... 8

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
   421 F. Supp. 2d 741 (S.D.N.Y. 2006).................................................................. 17

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)............................................................................... 3, 5

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*,
   487 F.3d 89 (2d Cir. 2007).................................................................................. 14

*Turner v. Temptu Inc.*,
   2013 WL 4083234 (S.D.N.Y. Aug. 13, 2013),
   *aff'd*, 586 Fed. Appx. 718 (2d Cir. Sept. 23, 2014) ........................................... 12

*Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*,
    2015 WL 5671724 (S.D.N.Y. Sept. 22, 2015) ........................................................................... 19

**Other Authorities**

Restatement of Contracts § 368 ................................................................................................... 17

Defendant Castlelake, L.P. ("Castlelake" or "Defendant") respectfully submits this memorandum and the Declaration of Daniel R. Walfish ("Walfish Decl.") in support of its motion to dismiss the Complaint of Transtel S.A. ("Transtel" or "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This case is an attempt to achieve through judicial proceedings a result that would be unimaginable commercially: the cancellation of outstanding corporate debt simply because the debtor is not achieving its desired outcome in negotiations with the creditor to voluntarily restructure the debt.

Transtel is a Colombian telecommunications firm and the equity owner of Transtel Intermedia S.A. ("Intermedia"), whose debt is distressed and in need of restructuring. Last June, Transtel approached Castlelake to see if it would participate in a potential transaction that, according to the Confidentiality Agreement ("Agreement") at the center of the Complaint, would involve Transtel or Intermedia's issuance of new equity and new debt. The Agreement purportedly prohibited Castlelake from purchasing Intermedia's securities for a one-year period except as part of a voluntary restructuring transaction or with Transtel's written consent.

Transtel does not allege that it shared any information soon after the Agreement was signed. Rather, approximately five months later, with Transtel's blessing, Castlelake purchased outstanding Intermedia bonds from a third party, alleged by Plaintiff to be Claren Road Asset Management ("Claren Road"). Transtel then negotiated with Castlelake for a potential voluntary restructuring of Intermedia's debt. In connection with those negotiations – and mainly *after*, not before, Castlelake purchased Intermedia debt – representatives of Transtel shared certain allegedly confidential information with Castlelake. When months of negotiations failed to

produce a deal, Transtel for the first time argued that Castlelake's purchase of Intermedia debt constituted a breach of the Agreement. Transtel now asserts counts for breach of contract, breach of fiduciary duty, unjust enrichment, and constructive trust. Transtel seeks, in addition to money damages, an extraordinary demand for "specific performance," as well as other forms of substantially equivalent equitable relief.

Each of Plaintiff's counts fails to state a claim. As an initial matter, the non-contract claims fail because they impermissibly duplicate the contract claims. Each also suffers from additional flaws. The fiduciary duty claim fails because Castlelake was not and is not a fiduciary of Transtel, and Transtel does not (and cannot) allege the required elements of knowing breach of duty or damages resulting therefrom. The unjust enrichment claim fails because Castlelake's purchase of the debt – allegedly not from Transtel but from a third party at arm's length – does not qualify as the kind of inequitable benefit that an unjust enrichment claim is designed to remedy. The constructive trust claim fails because one of the requirements for a constructive trust is unjust enrichment, which Plaintiff cannot show.

Plaintiff also fails to state a claim for breach of contract. Transtel does not and cannot allege any damages from Castlelake owning the Intermedia bonds instead of Claren Road. Transtel owns the equity in Intermedia, and is seeking to prevent dilution of that equity in a restructuring of Intermedia. But there is no allegation that any dilution has occurred because no restructuring has occurred. Plaintiff accordingly resorts to cursory and wild speculation about some future hypothetical restructuring transaction involving Castlelake as compared with some other, even more hypothetical transaction either not involving Castlelake or involving Castlelake in some other capacity.

Recognizing that its request for damages is far-fetched, Plaintiff instead seeks "specific performance," but this request fares no better. It is no longer possible to specifically perform an alleged covenant not to purchase securities, as Castlelake now holds those securities. So Plaintiff instead requests the transfer of the Intermedia bonds from Castlelake to itself *for no consideration*. This would produce a grossly inequitable windfall in which Intermedia would effectively be relieved of its debt without having gone through bankruptcy or reached agreement with its creditors. In addition to failing to plead a cognizable remedy, Plaintiff does not adequately allege a breach. The Agreement plainly allowed Castlelake to purchase Intermedia debt with Transtel's written consent, and such consent was given here.

The Court should dismiss the Complaint, with prejudice.

## BACKGROUND[1]

Transtel is the parent of Transtel Intermedia S.A. ("Intermedia"), a Colombian telecommunications company whose debt is distressed and in need of restructuring. *See* Compl. ¶¶ 2, 9, 14. In June 2017, according to the Complaint, "Transtel approached Castlelake" in the hopes that Castlelake could provide new financing to help Transtel buy back outstanding debt of Intermedia. *Id*. ¶ 14. The approach came not from Transtel directly, but from Seaport Global Securities LLC ("Seaport"). Walfish Decl. Ex. 1.[2]

Seaport, acting for Transtel, provided Castlelake with a draft of the Agreement in the form of a letter from Castlelake to Transtel, which Castlelake executed. Compl. ¶ 15 & Ex. A; Walfish Decl. Exs. 2, 3. The Agreement, which was to be governed by New York law (Compl.

---

[1] The following summary is drawn from the Complaint and related documents, *see infra* footnote 2. Defendant does not concede the accuracy of the allegations in the Complaint.

[2] The Court may take cognizance of documents "incorporated into the complaint by reference," as well as "documents possessed by or known to the plaintiff upon which it relied in bringing suit." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016). The exhibits submitted on this motion meet these standards.

Ex. A at 5), stated that Transtel was interested in "a potential transaction involving, among other things, the issuance of new debt and equity of the Company" (defined as Transtel and its subsidiaries). Compl. ¶ 16 & Ex. A at 1. Paragraph 7 of the Agreement reads as follows:

> We agree to treat the Confidential Information as confidential and proprietary, and shall not disclose it to any party other than our Representatives. *In addition, neither our company nor any person acting on our behalf or independently [sic] shall participate in any financing or refinancing, or acquire **any securities of the Financed Party** or any of its affiliated entities for a period of one year from the date hereof except in connection with the Transaction or with the written consent of Transtel*, whose consent may be given or withheld in its sole discretion. We acknowledge and agree that breach of this prohibition may cause irreparable damage to Transtel or the shareholders of the ***Financed Party*** and that our company shall be liable to the shareholders of the ***Financing Party*** for any damages resulting from a breach of this provision as if such shareholders were a party to this Agreement.

Compl. Ex. A at 3 (emphasis added).

The Agreement does not define the term "Financed Party" in the second and third sentence quoted above, or the term "Financing Party" in the third sentence. *See* Compl. Ex. A. The Complaint, however, substitutes "Transtel" for both terms, *see id*. ¶ 18 (bracketed insertions), apparently assuming that the phrase "securities of the Financed Party or any of its affiliated entities" refers to the securities of Transtel or its affiliates. Castlelake accepts that premise for argument's sake in this Memorandum, but does not concede its validity.[3]

In late November 2017, Castlelake purchased outstanding debt instruments issued by Intermedia. *See id*. ¶¶ 22, 24. The Complaint alleges that the previous holder of the bonds was Claren Road, and describes the alleged context and mechanics of the sale. *Id*. ¶¶ 14, 23-24. Although Plaintiff here challenges Castlelake's purchase as a violation of paragraph 7 of the

---

[3] Plaintiff's bracketed interpolation is difficult to square with the fact that the passage in question uses the term "Transtel" in the same sentences as both "Financed Party" and "Financing Party" – distinguishing between Transtel and those terms. Nor would it make sense to refer to Transtel as the "Financing Party," when Transtel allegedly was *seeking* financing.

Agreement, the purchases, as Plaintiff knows, were consummated and confirmed in writing by Plaintiff's representative Seaport. *See* Walfish Decl. Ex. 4 (Nov. 29, 2017 trade confirmation). In fact, Castlelake's counterparty on the trades was Seaport, not Claren Road. *Id.*[4]

Beginning no later than December 2017, Transtel and Seaport discussed with Castlelake a potential voluntary restructuring of Intermedia's debt. Compl. ¶ 26. In connection with those discussions, Transtel and its representatives shared information with Castlelake, including a "management presentation forecasting [Intermedia's] performance," "[Intermedia's] internal financial reports," and a financial model "projecting [Intermedia's] performance for the next five years." *Id.* ¶ 17; Walfish Decl. Ex. 5 (transmitting the five-year projection model). Almost all of this information was shared for the first time only *after* Castlelake had bought Intermedia debt. Compl. ¶ 17; Walfish Decl. Ex. 8 (management presentation sent Dec. 17, 2017); *id.* Exs. 6, 7 (financial reports sent Nov. 30 and Dec. 15, 2017).[5]

When months of negotiations over the restructuring proved unsuccessful, Transtel in April 2018 for the first time "asserted Transtel's" supposed "rights under the [Agreement]," claiming in a letter that Castlelake improperly acquired the Intermedia debt and demanding, among other things, that Castlelake "sell the bonds acquired from Claren Road to Transtel at the purchase price paid to Claren Road." *Id.* ¶ 29.

Plaintiff claims that as a result of the alleged transfer of the debt from Claren Road to Castlelake, Transtel "lost the opportunity to buy the bonds back itself" through new financing from Castlelake or some other party. *Id.* ¶ 28. However, Plaintiff does not and cannot allege that

---

[4] Discovery will reveal, too, that Transtel's management not only knew about and consented to the purchases ahead of time, but strongly encouraged the purchases.

[5] The Complaint relies heavily on Transtel's transmissions of confidential information without actually stating when the transmissions took place. Any implication that the information was shared only *before* the purchases should be disregarded. *See Tongue*, 816 F.3d at 206 n.6 ("Where a document is referenced in a complaint, 'the documents control,'" not the allegations).

any such opportunity actually existed or would have existed but for Castlelake's acquisition of Intermedia debt.

Plaintiff also claims that Transtel was "put in a materially worse position" when Castlelake "became the largest creditor of" Intermedia, and that Castlelake has sought "to impose more onerous restructuring terms than Transtel would otherwise have borne." *Id.* ¶¶ 28, 37. Ultimately Plaintiff's basic gripe appears to be that Intermedia's creditors allegedly are insisting on diluting the equity interests in Intermedia as a condition of reducing its debt burden. *See id.* ¶ 26. But no such dilution has occurred because no restructuring has occurred, and, in any event, dilution of equity was expressly contemplated in the Agreement. *Compare id.* ¶ 26 (complaining that Castlelake's proposed restructuring could "include . . . distributing equity to debt holders in exchange for reducing or eliminating [Intermedia's] outstanding indebtedness"), ¶ 29 (Transtel recently demanded that Castlelake "cease any attempt" to gain an equity stake in Intermedia) *with id.* ¶ 16 & Ex. A at 1 (potential restructuring transaction would "involv[e], *among other things*, the issuance of *new debt **and equity** of the Company*").

The Complaint asserts four claims: for breach of contract, breach of fiduciary duty, unjust enrichment, and constructive trust. The contract claim consists of a request for money damages and "specific performance whereby Castlelake transfers the illicitly held debt to Transtel" for no consideration. Compl. ¶¶ 38, 39. Plaintiff also seeks separately delineated forms of equitable relief that are substantially equivalent to one another and to the demand for specific performance. *See id.* at 11 Prayer for Relief (b), (c), (d).

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Elias v.*

6

*Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); some internal quotation marks omitted). "A complaint that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Rincon v. Covidien*, 2017 WL 2242969, at *1 (S.D.N.Y. May 22, 2017) (Furman, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) ("'[C]onclusory statements' are not enough.").

## I.      The Non-Contract Counts Are Unfounded and Redundant

As an initial matter, the three non-contract claims are all without foundation and impermissibly duplicate the contract claim. The only conduct at issue in the case is an alleged breach of the Agreement. As Plaintiff itself states in the first words of the Complaint: "*This action arises from Castlelake's [alleged] breach of [an] express contract*." Compl. ¶ 1.

### A.   Fiduciary Duty

The Second Circuit has explained that the elements of a breach of fiduciary duty claim are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). Here, *none* of these elements are alleged.

As to the existence of a fiduciary duty: "It is well established that where 'the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, [a fiduciary duty or other tort] claim is precluded as duplicative.'" *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 857 (S.D.N.Y. 2015) (Furman, J.) (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012)); *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 592 F. Supp. 2d 608, 624

(S.D.N.Y. 2009) ("Generally, no fiduciary duties arise where parties deal at arm's length in conventional business transactions.") (citing *In re Mid-Island Hospital Inc.*, 276 F.3d 123, 130 (2d Cir. 2002)). By contrast, a fiduciary relationship can arise "where the parties to a contract specifically agree to such a relationship, or if one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." *Pension Comm. of Univ. of Montreal*, 592 F. Supp. 2d at 624 (internal quotation marks omitted).

These principles easily dispose of the fiduciary duty claim. First of all, the fiduciary duty claim here challenges the identical alleged conduct as that challenged in the contract claim. *Compare* Compl. ¶¶ 44-45 (allegations of breach of fiduciary duty) *with id*. ¶¶ 34-36 (substantially identical allegations of breach of contract). Plaintiff is thus "merely seeking to obtain the benefit of the contractual bargain through [a claim] in tort," *Fixed Income Shares*, 130 F. Supp. 3d at 857.

Plaintiff also does not come close to alleging the existence of a fiduciary relationship. The parties here had an ordinary arm's length relationship. The Agreement makes no mention of a fiduciary relationship and does not otherwise demonstrate one. *See, e.g.*, *O.F.I. Imports v. G.E. Capital Corp.*, 2016 WL 5376208, at *7 (S.D.N.Y. Sept. 26, 2016) (a confidentiality agreement did not automatically "transform the parties into fiduciaries"); *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 582 (E.D.N.Y. 2014) (duty not to disclose or exploit information under nondisclosure agreements did not create "relationship of higher trust independent of" the contractual obligations). Nor does Transtel allege any other basis for inferring a fiduciary relationship.[6] It was Transtel, not Castlelake, that had superior information about its own

---

[6] The allegation that "Transtel placed its trust in Castlelake to fairly evaluate the proposed transaction for *Transtel's* benefit," Compl. ¶ 41 (emphasis added), flunks *Iqbal*. That sentence is a "'formulaic

subsidiary. The notion that Castlelake, by virtue of entering into an Agreement expressly

contemplating that Castlelake could become a *creditor* of Transtel somehow also became a

*fiduciary* for Transtel – a party required to place Transtel's interests ahead of its own – is

illogical and implausible. It is well established that a debtor-creditor relationship "does not create

a fiduciary duty of the latter to the former." *Fallon v. Wall Street Clearing Co.*, 182 A.D.2d 245,

250 (1st Dep't 1992). In sum, Plaintiff has not alleged a fiduciary duty.

Additionally, Plaintiff does not (and cannot) allege either *knowing* breach of an alleged

duty, or damages resulting from the alleged breach (*see* Compl. ¶¶ 41-45), both required

elements of a fiduciary duty claim. *See Johnson*, 660 F.3d at 138; *Davis v. 1568 Broadway Hotel

Mgmt. LLC*, 2018 WL 317849, at *4 (S.D.N.Y. Jan. 5, 2018) (dismissing fiduciary duty claim

for, among other reasons, failure to allege knowing breach and causally connected damages).

The fiduciary duty claim should be dismissed.

### B.  Unjust Enrichment

The unjust enrichment claim also fails. The New York Court of Appeals and the Second

Circuit have repeatedly explained that unjust enrichment is an equitable remedy designed to

prevent injustice "*in the absence of an actual agreement between the parties concerned*. Where

the parties executed a valid and enforceable written contract governing a particular subject

matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is

ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142

---

recitation,'" 556 U.S. at 678, of the element of reposing trust (the gravamen of a fiduciary relationship),
and does not begin to "'nudg[e] . . . to plausible,'" *id*. at 683, Plaintiff's quite *im*plausible premise that
Castlelake, an investment firm with no prior relationship with Transtel, was acting for *Transtel*'s benefit
as opposed to the benefit of Castlelake's own investors. *See, e.g.*, *N. Shipping Funds I, LLC v. Icon
Capital Corp.*, 921 F. Supp. 2d 94, 105-06 (S.D.N.Y. 2013) (conclusory allegations of a relationship of
trust are insufficient to plead a fiduciary relationship); *Barbara v. MarineMax, Inc.*, 2012 WL 6025604, at
*11 (E.D.N.Y. Dec. 4, 2012) (same).

(2009) (emphasis added). *Accord, e.g.*, *Goldman v. Met. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)

("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law

creates *in the absence of any agreement*. Here, . . . there was no unjust enrichment because the

matter is controlled by contract." (emphasis added)); *In re First Cent. Fin. Corp.*, 377 F.3d 209,

213 (2d Cir. 2004) (recognizing the New York rule that "bars a finding of unjust enrichment in

the face of a valid and enforceable written agreement"); *see also Corsello v. Verizon N.Y., Inc.*,

18 N.Y.3d 777, 790-91 (2012) ("unjust enrichment is not a catchall cause of action to be used

when others fail. . . . Typical cases are those in which the defendant, though guilty of no

wrongdoing, has received money to which he or she is not entitled. An unjust enrichment claim

is not available where it simply duplicates, or replaces, a conventional contract or tort claim."

(citations omitted)).

Here, Plaintiff alleges that there is a contract covering the subject matter – the

Agreement, which Plaintiff attached to the Complaint – and thus its unjust enrichment claim

must be dismissed. *See, e.g.*, *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 526 (S.D.N.Y. 2017)

(Furman, J.) (rejecting claim of unjust enrichment based on alleged misappropriation of contacts

and business plans; contract covered the subject matter and was the sole protection against such

conduct); *McBeth v. Porges*, 171 F. Supp. 3d 216, 231-32 (S.D.N.Y. 2016) (Furman, J.) ("the

parties' dispute is governed by an express contract and thus unjust enrichment does not lie. . . .

'[t]o the extent that [Plaintiff's other] claims succeed, the unjust enrichment claim is duplicative;

if [his] other claims are defective, an unjust enrichment claim cannot remedy the defects.'").

The unjust enrichment theory fails for the additional reason that Castlelake has not been

"enriched" in any relevant sense. The usual theory of unjust enrichment is that party A, outside

of a contractual relationship, bestows money or some other benefit on party B that party B – for

10

reasons of equity – should not retain and should return to party A. *See, e.g.*, *Corsello*, 18 N.Y.3d at 790-91. Here, the supposed benefit conferred on Castlelake is the bonds. *See* Compl. ¶ 47. But, far from Transtel bestowing the bonds on Castlelake (and doing so for free), Castlelake allegedly *paid for the bonds in an arm's length sale with a third party*. *See id.* ¶¶ 24, 27. Castlelake, moreover, has not sold (or otherwise disposed of) the bonds. It therefore has realized *no benefit*, let alone *unjust* enrichment such that it should be required to turn the bonds over to Transtel. *See, e.g.*, *Ciamara Corp. v. Widealab, Inc.*, 2013 WL 6331927, at *4 (S.D.N.Y. Dec. 5, 2013) (Furman, J.) ("Plaintiff fails to plead that any Defendant 'accepted' the benefit of Plaintiff's efforts outside the context of the contract or that Plaintiff expected compensation outside that context. As a result, Plaintiff's restitution claims fail."). And, as explained in Section II.B. below, an order requiring Castlelake to turn over the bonds[7] to Plaintiff would be a highly inequitable result – the very opposite of what an unjust enrichment claim is designed to accomplish.

### C. Constructive Trust

Plaintiff's constructive trust claim restates the unjust enrichment claim (*compare* Compl. ¶¶ 52-56 *with id.* ¶¶ 47-49) and fails for largely the same reasons, including the existence of a written agreement. *See First Central Fin. Corp.*, 377 F.3d at 213 ("[The] principle [] that the existence of a written agreement precludes a finding of unjust enrichment [] also applies to constructive trust claims[.]"). In fact, here the claim for a constructive trust is *expressly based* on Castlelake's alleged breach of the Confidentiality Agreement, *see* Compl. ¶¶ 52-53, and even

---

[7] On the unjust enrichment and constructive claims, Transtel is inconsistent (or at least unclear) as to whether it wants Castlelake to give it the actual bonds or the value of the bonds. *Compare* Compl. ¶¶ 49, 56 & Prayer for Relief (asserting in unjust enrichment and constructive trust counts, but not the Prayer for Relief, that Transtel is "entitled to disgorgement of the *value* of Castlelake's [Intermedia] debt holdings") *with id.* ¶ 57 & Prayer for Relief (c), (d) (alleging in the constructive trust count and the Prayer for Relief that Castlelake should be compelled to transfer the *bonds* to Transtel). Ultimately, it does not matter because Transtel, for all the reasons set forth above, is not entitled to either of these equitable remedies.

substantially parrots the operative language in the breach of contact claim. *Compare id*. ¶¶ 51-53, 57 *with id*. ¶¶ 34-36, 39.

In addition, one of the elements of a constructive trust claim in New York is unjust enrichment. *E.g.*, *In re Ades and Berg Grp. Investors*, 550 F.3d 240, 245 (2d Cir. 2008). As explained above, there is no claim here for unjust enrichment, and accordingly the claim for a constructive trust also fails. *See Turner v. Temptu Inc.*, 2013 WL 4083234, at *10 n.3 (S.D.N.Y. Aug. 13, 2013) (Furman, J.) (dismissing constructive trust demand because "[u]nder New York law, a constructive trust will not be imposed absent a finding of unjust enrichment."), *aff'd*, 586 Fed. Appx. 718 (2d Cir. 2014).

## II.     Plaintiff Fails To State a Claim for Breach of Contract

The contract claim also is deficient. First, damages are not alleged; Plaintiff's theory of harm instead rests on sheer speculation about some future hypothetical transaction as compared with some other alternative, even more hypothetical transaction. Nor is Plaintiff entitled to the requested "specific performance," which would actually be an inequitable windfall. Even more fundamentally, Plaintiff does not adequately allege breach. The Confidentiality Agreement (even accepting Plaintiff's proposed interpretation) allowed for purchases of Intermedia's debt with Transtel's written consent, and documents properly before the Court reflect that Transtel provided such consent here.

### A.  Plaintiff Has Not Alleged Damages

To maintain a suit for breach of contract, a plaintiff must allege *damage* resulting from an alleged breach. *E.g.*, *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *see also Pu v. Russell Publ'g Grp.*, 683 Fed. Appx. 96, 97 (2d Cir. 2017) (contract plaintiff is "required to allege facts showing that the complained-of activity

caused him damages"). Transtel does not and cannot meet this basic requirement, even though it recites in conclusory fashion that it "is entitled to money damages for Castlelake's breach of contract." Compl. ¶ 38. *Cf. IBM Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) ("[A]n allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*.").

Transtel's interest here derives from its ownership of the equity in Intermedia. *Id.* ¶¶ 2, 5, 26. Transtel wants to prevent the dilution of that equity in a reorganization or restructuring of Intermedia. *Id.* But there is no allegation that any such dilution has occurred because no reorganization or restructuring has occurred. The only thing that has happened is that *existing debt* of Intermedia has changed hands: allegedly from Claren Road to Castlelake. But the value of the equity in Intermedia of course does not depend on the identity of Intermedia's creditors. In other words, Transtel does not allege that it has suffered any loss from the alleged transfer from Claren Road to Castlelake. *Cf. Andrews v. Sotheby Int'l Realty, Inc.*, 2014 WL 626968, at *5 (S.D.N.Y. Feb. 18, 2014) ("'In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint.'"), *aff'd*, 586 Fed. App'x 76 (2d Cir. Dec. 5, 2014); *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436 (1st Dep't 1988) ("[T]he complaint is fatally deficient because it does not demonstrate how the defendant's alleged breach of the confidentiality agreement caused plaintiffs any injury. The complaint contains only boilerplate allegations of damage.").

Without a real theory of damage, Transtel half-heartedly resorts, in two paragraphs of the Complaint, to wild speculation about some *future* reorganization or restructuring involving Castlelake, and about some alternative hypothetical restructuring that either did not involve Castlelake or involved Castlelake in a different capacity. Compl. ¶¶ 28, 37. In particular, reading

13

those paragraphs generously, Transtel alleges that (1) Transtel has lost the opportunity to retire the existing Intermedia debt through some other party's (or even Castlelake's) new financing, and (2) that Castlelake has sought in the restructuring discussions "to impose more onerous . . . terms" than "Transtel would otherwise have borne" in a hypothetical refinancing. *Id*. The implication is that Transtel's equity stake in Intermedia *might*, after a restructuring, turn out to be smaller than it would have been if only (i) some other creditor had been the holder of the Intermedia debt now held by Castlelake *and* (ii) some hypothetical alternative restructuring had taken place.

These allegations are simply too speculative to ground a claim for contract damages. Contract damages in New York "'must be not merely speculative, possible, and imaginary, but they must be *reasonably certain* and such only as actually follow or may follow from the breach of contract.'" *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (emphasis in original). Plaintiff does not and cannot allege that, had Claren Road or anyone else held the Intermedia debt that Castlelake now holds, such other party would have proposed less onerous terms in negotiations than Castlelake has proposed. (In fact, the Agreement expressly noted Plaintiff's understanding that a future restructuring would involve the dilution of equity. Compl. ¶ 16 & Ex. A at 1.) Further, Plaintiff does not and cannot allege that Castlelake or anyone else was actually interested in helping to finance the retirement of existing Intermedia debt on Plaintiff's preferred terms. Finally, Plaintiff does not and cannot begin to allege that a restructuring actually could have or would have taken place in these alternative scenarios, let alone that Plaintiff is damaged by the loss of such an opportunity. *See, e.g.*, *Boccardi Capital Sys. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 2009 WL 362118, at *6 (S.D.N.Y. Feb. 9, 2009) (granting motion to dismiss contract claim where damages theory

depended on "'hypothesized successful completion of proposed' transactions"; "Plaintiff's

speculative optimism, concerning what 'could have and would have' happened" were no

substitute for allegations of "direct causation and actual damages"); *cf. Ciamara Corp. v.*

*Widealab, Inc.*, 2013 WL 6331927, at *5 (S.D.N.Y. Dec. 5, 2013) (Furman, J.) (granting motion

to dismiss plaintiff's claim for speculative contract damages).

 Equally problematic, the supposed harm that Plaintiff alludes to is "contingent on future

events that may not occur," *Bank Midwest, N.A. v. Hypo Real Estate Capital Corp.*, 2010 WL

4449366, at *3 (S.D.N.Y. 2010), namely the actual occurrence of a restructuring or

reorganization resulting in a dilution of equity. In *Bank Midwest*, the plaintiff lender sought

damages based on the defendant having subordinated the plaintiff's security interest in real

property, allegedly in breach of contract. *Id*. The Court explained that this damages theory was

insufficient because the challenged subordination would result in a loss only if the borrower

defaulted – a contingent "future harm . . . too speculative to constitute a compensable injury." *Id*.

This case is even more speculative than *Bank Midwest* because in *Bank Midwest*, the challenged

subordination had already occurred (though the risk associated with it had not materialized).

 Here, though, Plaintiff theorizes (i) that its equity *might* be diluted in the future, not that it

*has* been diluted, and (ii) that in some other alternate universe in which Claren Road or another

creditor held the bonds, a restructuring would have been accomplished without dilution—even

though Transtel all along had contemplated a potential dilution of equity. Compl. ¶ 16 & Ex. A

at 1. Even under the relatively forgiving standards governing federal pleading, Transtel's

damages claim rests on far too much conjecture. *See Andrews*, 2014 WL 626968, at *6

(observing that a *Twombly* court is not required to "speculate as to the damages [plaintiff] could

15

have conceivably suffered"). The contract claim should be dismissed to the extent that it seeks damages.

### B.  Plaintiff's Requested "Specific Performance" Would Be Grossly Inequitable

Presumably recognizing that it cannot establish damage, Plaintiff also seeks what it terms "specific performance" of the Agreement. Specifically, Transtel requests the court-ordered confiscation, and transfer to Transtel, of the Intermedia debt currently held by Castlelake. Compl. ¶ 39; *see also id*. at 11 Prayer for Relief (b)-(d) (requesting "an order requiring Castlelake to transfer the bonds to Transtel," "disgorgement of the bonds," and an injunction "prohibiting Castlelake from seeking payment under the bonds" or otherwise enforcing its rights as a creditor, effectively nullifying the debt). This extraordinary demand fares no better.

As an initial matter, specific performance, properly understood, is simply not possible here. *See, e.g.*, *Laurus Master Fund, Ltd. v. Versacom Int'l, Inc.*, 2003 WL 21219791, at *3 (S.D.N.Y. May 21, 2003) (the specific performance remedy requires, among other things, that "defendant is able to perform its obligations"); *La Mirada Prods. Co. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993) (same). The contractual provision at issue is an alleged negative covenant – a commitment *not* to purchase certain securities. But the purchases that Transtel challenges here have already taken place. This is thus not a situation in which Transtel, having become aware before the sale that Castlelake *intended* to purchase,[8] came to court seeking an order enjoining the transaction. Arguably, such an injunction would have accomplished specific performance of the alleged contract provision. Nor is it possible for the Court to turn back the clock to before the sale. To do so, Claren Road and/or Seaport, neither of which is a party here, would have to be forced, against their will, into some sort of court-fashioned transaction intended

---

[8] As noted elsewhere (*see supra* footnote 4; *infra* section II.C.), representatives of Transtel were aware of and consented to the purchases at issue.

to reverse the November 2017 purchases. Accordingly, specific performance is not a proper remedy here. *See, e.g.*, *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 760 (S.D.N.Y. 2006) ("[T]his Court cannot issue a decree for specific performance if effectuation of the performance sought is either impossible or would violate the rights of a third party whose interest . . . is superior to the defendant's."); *Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.*, 458 F. Supp. 1197, 1200 (S.D.N.Y. 1978) (Weinfeld, J.) ("The rule is that '[s]pecific enforcement will not be decreed if the performance sought is impossible . . . or is in violation of the rights of a third person which are superior to those of the plaintiff.'") (quoting Restatement of Contracts § 368).

But Transtel is not actually requesting specific performance. Instead it asks the Court to exercise its equitable powers to effectively cancel Intermedia's debt for no consideration. This is an extra-contractual remedy that would result in a windfall to Plaintiff, which would be relieved – outside of a bankruptcy proceeding – of the burdensome debt that it has been trying to restructure. Quite contrary to the usual purpose of specific performance – to effectuate the parties' agreement and *enforce* the terms of a contract – Plaintiff seeks from this Court an extraordinary outcome that it could not dream of achieving in a commercial setting (and could obtain only in bankruptcy). The result requested here "would run counter to the fundamental principle of contract law that courts should attempt to place the non-breaching party in the same position it would have occupied if the breach had never occurred." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 2006 WL 1493132, at *11 (S.D.N.Y. May 31, 2006).

In fact, Transtel apparently recognizes this point because its pre-litigation proposal was that Castlelake surrender the bonds to Transtel *in exchange for the price Castlelake paid for them*. Compl. ¶ 29. Here, however, Transtel expects to have Castlelake turn over the debt for free

17

– giving one side much more than it ever bargained for and leaving the other completely empty-handed. This request for a lopsided quasi-rescission thus violates the critical principle that an equitable remedy must *do equity*. In fact, the traditional remedy of rescission is available only if "'the status quo may be substantially restored' by [such] equitable relief." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 227 (2d Cir. 2017) (quoting *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1 (1972)). In this case, the status quo cannot be restored, and in any event Plaintiff is not seeking to restore it. *See, e.g.*, *Aristocrat Leisure*, 2006 WL 1493132, at *11 (declining to grant specific performance that "would provide windfalls to" certain parties); *see also Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980) (rejecting rescission remedy that would give plaintiff a "windfall"). Plaintiff's demand for "specific performance" and related equitable relief as a remedy for breach of contract fails to state a claim.

### C.  Plaintiff Does Not Adequately Allege a Breach of the Agreement Because Transtel Consented to the Purchases

There is an even more fundamental problem with the contract claim. The Agreement permitted Castlelake to acquire Transtel or Intermedia securities "with the written consent of Transtel." Compl. Ex. A ¶ 7. Here, such consent was unambiguously granted. The Court may take cognizance that the purchases at the core of the Complaint were agreed to and confirmed by Seaport, Walfish Decl. Ex. 4, which Plaintiff's own allegations reveal was functioning as Transtel's representative. *E.g.*, Compl. ¶¶ 2, 14, 27. The Agreement does not say that written consent needed to take any particular form; a confirmatory email from Transtel's representative surely suffices. That is enough to dispose of the contract claim.

Lest Plaintiff argue that emails with Transtel or its representatives are not properly considered here, it is worth noting that the Complaint effectively rests on just two sets of allegations. The first is that in June 2017, *Transtel* approached Castlelake and had it sign a

18

Confidentiality Agreement. The Court therefore may consider the documentation of the actual approach culminating in the Agreement, which is contained in Exhibits 1 through 3 of the Walfish Declaration. *See* footnote 2 *supra*; *see also, e.g.*, *Holowecki v. FedEx Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) ("'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it . . . relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss[.]'"); *cf. Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*, 2015 WL 5671724, at *8 (S.D.N.Y. Sept. 22, 2015) (considering emails leading up to an alleged agreement that were referenced in Complaint and submitted by defendant on Rule 12(b)(6) motion). Those documents show unambiguously that the approach came from *Seaport*. Because the Complaint must be deemed true at this stage, Seaport had to have been functioning as Transtel's representative. *See* Compl. ¶¶ 2, 14, 27 & header before ¶ 14 (repeatedly alleging, in reference to the June approach from Seaport, that *Transtel* "approached" or "invited" Castlelake).

The second set of allegations is that Castlelake bought Intermedia bonds after receiving specified transmissions of confidential information. The Court therefore can consider the actual transmissions of information, which are contained in Exhibits 5 through 8 of the Walfish Declaration, and the confirmation of the actual purchases, which is contained in Exhibit 4 of the Walfish Declaration. *See* footnote 2 *supra*; *see also, e.g.*, *Holowecki*, 440 F.3d at 565-66. The documents show unambiguously that Seaport (Transtel's representative) consented in writing to the disputed purchases. *See* Walfish Decl. Ex. 4. The documents also show that most of the transmissions occurred *after* Castlelake had already bought the Intermedia debt, *compare id.* Exs. 6, 7, 8 (transmissions of "internal financial reports" and "management presentation" alleged at

Compl. ¶ 17 occurred on November 30 and December 17 and 19, 2017) *with id*. Ex. 4 (trade

completed on Nov. 29, 2017), and so cannot possibly have been used to buy the debt. To the

extent one piece of information referenced in the Complaint was sent earlier, it was plainly to

encourage Castlelake to buy the very debt that it actually bought as a precursor to a restructuring.

*See id*. Ex. 5 (Nov. 14, 2017 email from Seaport transmitting five-year financial model alleged at

Compl. ¶ 17 and urging Castlelake to buy into the existing debt). In other words, this

transmission, too, satisfied the need, if any, for written consent to the disputed purchases.[9]

## CONCLUSION

The Complaint should be dismissed with prejudice.


Dated: June 21, 2018                          Respectfully submitted,

                                              WALFISH & FISSELL LLP

                                              By:  ___/s/ Daniel R. Walfish_____
                                                   Daniel R. Walfish
                                                   Rachel Penski Fissell
                                                   11 Broadway Suite 615
                                                   New York, NY 10004
                                                   Tel.: 212-672-0521
                                                   Email: dwalfish@walfishfissell.com

                                              *Attorneys for Defendant Castlelake, L.P.*

---

[9] The Agreement expressly allowed Castlelake to purchase Intermedia debt "in connection with" a potential restructuring "Transaction." *See* Compl. Ex. A ¶ 7 & page 1 (definition of "Transaction"). Discovery will yield additional evidence that the purchases now challenged by Transtel were "in connection with" just such a potential transaction – another reason there was no breach.